# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANOKIWAVE, INC., <br><br> Plaintiff, <br><br> v. <br><br> GABRIEL REBEIZ; SPECTRABEAM, LLC; TUMAY KANAR; SAMET ZIHIR; and DOES 1 through 20 inclusive, <br><br> Defendants. | Case No.: 18-CV-629 JLS (MDD) <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** <br><br> (ECF No. 6) |

Presently before the Court is Defendants Gabriel Rebeiz, Tumay Janar, Samet Zihir, and SpectraBeam, LLC's Motion to Dismiss ("MTD," ECF No. 7). Also before the Court is Plaintiff Anokiwave, Inc.'s Response in Opposition to the Motion ("Opp'n," ECF No. 10), and Defendants' Reply in Support of the Motion ("Reply," ECF No. 11). The Court vacated oral argument on the Motion and took the matter under submission without oral argument. ECF No. 12. After considering the Parties' arguments and the law, the Court rules as follows.

## BACKGROUND

Plaintiff filed a second amended complaint in state court which Defendants removed to this Court. ECF No. 1-2 (Second Amended Complaint ("SAC")). Plaintiff alleges the

following facts:

In October 2013, Gabriel Rebeiz, a professor at the University of California, San Diego, accepted an offer to serve as a member of Anokiwave's Advisory Board. SAC ¶ 12.) On May 21, 2014, Dr. Rebeiz executed a Proprietary Information Agreement ("PIA"). *Id.* ¶ 13. In the PIA, Dr. Rebeiz agreed he would not disclose or use Anokiwave's Proprietary Information, would not engage in unfair competition, and would not disclose confidential information about Anokiwave's business affairs. *Id.* "Proprietary Information" includes, among other things, trade secrets, ideas, and information regarding plans for research, development, products, etc. *Id.* ¶ 14. Dr. Rebeiz received access to this information. *Id.* ¶ 15. Dr. Rebeiz also received stock options to purchase up to 100,000 shares of Anokiwave's common stock. *Id.* ¶¶ 16–17.

In 2015, Anokiwave became concerned that Dr. Rebeiz was competing with Anokiwave and that Anokiwave's customers were "testing arrays that used Anokiwave's products at [Dr.] Rebeiz's laboratory." *Id.* ¶ 23. In August 2016, Dr. "Rebeiz asked to step down from Anokiwave's Advisory Board because he was going to obtain stock ownership in a new company that was being founded by his students." *Id.* ¶ 25. Anokiwave sent Dr. Rebeiz a notice of termination and, before leaving, Dr. Rebeiz purchased the stock options that had vested. *Id.* ¶¶ 26–27.

In April 25, 2017, Dr. Rebeiz's students, Defendants Tumay Kanar and Samet Zihir, founded SpectraBeam, LLC.[1] *Id.* ¶ 28. Plaintiff points to various similarities between the products produced by SpectraBeam and by Anokiwave and alleges that "Anokiwave's products were essentially copied to create SpectraBeam's products." *Id.* ¶¶ 31–32. Plaintiff therefore alleges Dr. "Rebeiz provided the SpectraBeam Defendants with the details of Anokiwave's Proprietary Information as defined in the PIA relating to the development, production, and sales targets of Anokiwave's RF-microchips." *Id.* ¶ 33.

///

---

[1] Defendants Kanar, Zihir, and SpectraBeam, LLC are referred to as the "SpectraBeam Defendants."

Anokiwave alleges twelve causes of action: (1) breach of contract; (2) breach of fiduciary duty; (3) aiding and abetting a breach of fiduciary duty; (4) fraud in the inducement; (5) intentional interference with existing contractual relations; (6) tortious interference with prospective business relations; (7) misappropriation of trade secrets; (8) false advertising under the Lanham Act; (9) false advertising under California Business and Professions Code § 17500; (10) unfair competition under California Business and Professions Code § 17200; (11) Odin mask work infringement, 17 U.S.C. § 911; and (12) Laguna mask work infringement, 17 U.S.C § 911.

Defendants move to dismiss the majority of the causes of action.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

## ANALYSIS

**I.     Preemption**

Defendants first argue that Plaintiff's second, third, fourth, fifth, sixth, and tenth causes of action are preempted by the California Uniform Trade Secrets Act.

### *A.     California Uniform Trade Secrets Act*

The California Uniform Trade Secrets Act ("CUTSA") is codified in California Civil Code sections 3426 through 3426.11. Section 3426.7 of the CUTSA "preempts common law claims that are 'based on the same nucleus of facts as the misappropriation of trade secrets claim for relief.'" *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 958 (2009) (quoting *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005)). Section 3426.7 does not affect "contractual remedies" and civil remedies "that are not based upon misappropriation of a trade secret." *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 233 (2010), *disapproved of on other grounds by Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310 (2011). The focus is on "whether [the] claims are not more than a restatement of the same operative facts supporting trade secret misappropriation. . . . If there is no material distinction between the wrongdoing alleged in a [C]UTSA claim and that alleged in a different claim, the [C]UTSA claim preempts the other claim." *Convolve, Inc. v. Compaq Comp. Corp.*, No.

4

00 CV 5141(GBD), 2006 WL 839022, at *6 (S.D.N.Y. Mar. 31, 2006) (internal quotations omitted) (applying California law).

Various courts have held that CUTSA may supersede certain claims, including "claims for conversion, common count, quantum meruit, unjust enrichment, breach of confidence, unfair competition, and intentional and negligent misrepresentation where the wrongdoing alleged in connection with such claims is the misappropriation of trade secrets." *SunPower Corp. v. SolarCity Corp.*, No. 12-CV-694-LHK, 2012 WL 6160472, at *3 (N.D. Cal. Dec. 11, 2012) (collecting cases). A claim is not preempted, however, if the plaintiff asserts "*some other basis in fact or law* on which to predicate the requisite property right." *Silvaco*, 184 Cal. App. 4th at 238–39. A non-CUTSA claim is not displaced if it has "a basis independent of any misappropriation of a trade secret." *Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495, 507 (2013) (finding plaintiff's claims for breach of contract, breach of fiduciary duty, unfair competition, interference with business relations and conversion are not preempted); *see also Axis Imex, Inc. v. Sunset Bay Rattan, Inc.,* No. C 08–3931, 2009 WL 55178, at *5 (N.D. Cal. Jan. 7, 2009) (finding a claim is not preempted if based on facts that are "similar to, but distinct from" those underlying the misappropriation claim).

### B. *Premature*

The Court first addresses Plaintiff's preliminary argument that dismissing claims on preemption grounds is premature. Opp'n at 21. Plaintiff argues that it is premature because it has not yet been determined whether the Proprietary Information obtained by Defendants constitutes trade secrets. *Id.*

In *SunPower*, the plaintiff similarly argued that the court should not analyze CUTSA preemption until the court determines that the stolen information fits the definition of trade secret. 2012 WL 5150472, at *14. The court engaged in a lengthy analysis as to whether CUTSA preempts claims "based on the misappropriation of information, regardless of whether such information ultimately satisfies the definition of trade secret." *Id.* at *7. The court concluded that it does. *Id.*; *see also Jardin v. Datallegro, Inc.*, 10–CV–2552–IEG

WVG, 2011 WL 1375311, at *4 (S.D. Cal. Apr. 12, 2011) ("CUTSA preempts all claims based upon the misappropriation of . . . confidential information, whether or not that information rises to the level of a trade secret.") (internal quotations omitted); *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 987 (C.D. Cal. 2011) ("In an effort to align with the California courts that have addressed this issue, the Court concludes that [C]UTSA supersedes claims based on the misappropriation of confidential information, whether or not that information meets the statutory definition of a trade secret.") (citing *Silvaco*, 184 Cal. App. 4th at 239 n.22).

This Court agrees with the foregoing opinions. Plaintiff has alleged that Defendants wrongfully used its confidential information. The Court may still analyze possible preemption under CUTSA whether or not this information has been officially defined as a "trade secret." Defendants allege the second, third, fourth, fifth, sixth, and tenth causes of action are preempted.

### C. Second Cause of Action: Breach of Fiduciary Duty

Plaintiff alleges that Dr. Rebeiz "took on a role akin to a director and trusted advisor of Anokiwave" when he joined the Advisory Board and demanded "to be compensated as a member of Anokiwave's Board of Directors." SAC ¶ 41. Anokiwave placed trust and confidence in Dr. Rebeiz and shared vital information with him. *Id.* ¶ 47. Dr. Rebeiz "betrayed" this trust and confidence by

> (1) disclosing Anokiwave's Proprietary Information relating to the development, production, and sales targets of Anokiwave's RF-microchips for the benefit of Anokiwave's competitors, including SpectraBeam, and to the detriment of Anokiwave; (2) using his position as a close advisor of Anokiwave to reach and solicit Anokiwave's customers and potential customers; (3) abusing his knowledge of Anokiwave's Proprietary Information to unfairly compete with Anokiwave; and (4) intentionally injuring Anokiwave.

SAC ¶ 49.

///

6

18-CV-629 JLS (MDD)

Plaintiff argues this claim is not preempted because it is not based on any misappropriation of a trade secret. Opp'n at 14. Plaintiff contends that the Court must look at the "'operative facts' for the purposes of the cause action" in making this determination. *Silveraco*, 184 Cal. App. 4th at 242. Here, Plaintiff argues, the facts show the claim is "based on the independent obligations imposed by the PIA and Rebeiz's fiduciary duties to Anokiwave." Opp'n at 14.

Both parties cite to *Angelica Textile*, 220 Cal. App. 4th 495. In *Angelica Textile*, a company that provided linen services brought suit against its former employee, who had included in defendant's customers' contracts that they could cancel their contracts with the defendant. *Id.* at 499. The plaintiff then permitted those customers to take their business to the defendant's new employer. *Id.* The plaintiff's complaint alleged claims for misappropriation of trade secrets, violation of California Business and Professions Code section 17200, unfair competition, interference with business relationships, and breach of contract. *Id.* at 502. The trial court granted the plaintiff summary adjudication on its non-CUSTA causes of action, and the court of appeals reversed.

In analyzing the claim, the court of appeals recognized the principle that "[C]UTSA does not displace noncontract claims that, although related to a trade secret misappropriation, are independent and based on facts distinct from the facts that support the misappropriation claim." *Id.* at 506. The court found that the plaintiff's "claims for breach of contract, breach of fiduciary duty, unfair competition, interference with business relations and conversion each have a basis independent of any misappropriation of a trade secret." *Id.* at 507. Specifically as to the breach of fiduciary duty claim, the court found this claim was "based on [the defendant]'s wrongful conduct in violating the noncompetition agreement and violating his duty of loyalty to[plaintiff]" and thus "was independent of any trade secret claim." *Id.* at 508. Thus, it was not preempted. *Id.*

Similarly, in *Silvaco*, the court held that the plaintiff's unfair business practices claim was not preempted by CUTSA. The claim

///

> does not depend on the existence of a trade secret, but on knowingly facilitating another in the violation of its obligations under a judicial decree. If one is enjoined from disclosing information, and one discloses that information in violation of the injunction, the legal consequences of that act are not affected by the status of the information as a trade secret. Indeed it may not, and need not, *be* a trade secret.

184 Cal. App. 4th at 241–42.

Here, in sum, Plaintiff alleges Dr. Rebeiz breached his fiduciary duty because he used his position to receive certain information and then disclosed this information to the SpectraBeam Defendants. This assertion makes this case distinguishable from *Silvaco* because the whole theory behind the breach of fiduciary duty here is the disclosure of proprietary information. There would be no alleged breach if Dr. Rebeiz had disclosed non-confidential information. Thus, the claim *does* depend on the existence of and disclosure of proprietary information. The present case is also distinguishable from *Angelica*, in which the defendant breached his duty of loyalty to the plaintiff by modifying contracts and negotiating with customers. In *Angelica*, whether or not the defendant disclosed trade secrets was an independent issue. That is not the case here, where the allegation is that Dr. Rebeiz breached his duty of loyalty *by* disclosing trade secrets. The claim for breach of fiduciary duty is based on the same operative facts and is therefore preempted by CUTSA. Consequently, the Court **GRANTS** the Motion to Dismiss the second cause of action.

### D. *Third Cause of Action: Aiding and Abetting a Breach of Fiduciary Duty*

This cause of action alleges the SpectraBeam Defendants aided and abetted Dr. Rebeiz's breach of fiduciary duty by encouraging him to:

> (1) disclose Anokiwave's Proprietary Information relating to the development, production, and sales targets of Anokiwave's RF-microchips for the benefit of the SpectraBeam Defendants and to the detriment of Anokiwave; (2) use his position as a close advisor of Anokiwave to reach and solicit Anokiwave's customers and potential customers; (3) abuse his knowledge of

> Anokiwave's Proprietary Information to help SpectraBeam unfairly compete with Anokiwave; and (4) intentionally injure Anokiwave.

SAC ¶ 53. This cause of action rises and falls with the second cause of action analyzed above, *see supra* Section I.C, as there would be nothing for SpectraBeam Defendants to aid and abet if there was no underlying breach by Dr. Rebeiz. Consequently, this cause of action is likewise preempted by CUTSA and the Court **GRANTS** the Motion to Dismiss the third cause of action.

### *E. Fourth Cause of Action: Fraud in the Inducement*

This cause of action alleges that Dr. Rebeiz falsely asserted that the Proprietary Information would remain confidential. *Id.* ¶ 60. Plaintiff alleges that Dr. Rebeiz made these false representations "in order to induce Anokiwave to (1) enter into the Advisory Board Agreement and PIA, (2) share Anokiwave's Proprietary Information with him, and (3) issue Rebeiz nonqualified stock options." *Id.* ¶ 59. As a result, Anokiwave disclosed confidential information to Dr. Rebeiz and surrendered shares of stock to Dr. Rebeiz as compensation. *Id.* ¶ 62.

In moving to dismiss this cause of action, Defendants refer to it as a "promissory fraud claim" after determining that "Anokiwave appears to have intended to plead a claim for promissory fraud." MTD at 19 n.3. Plaintiff responds that this is "irrelevant" and it is a claim "for fraud." Opp'n at 17 n.5. Indeed, "[t]he elements of fraud in inducement of a contract are the same elements as actual fraud." *Rodriguez v. JP Morgan Chase & Co.*, 809 F. Supp. 2d 1291, 1296 (S.D. Cal. 2011) (citing Cal. Civ. Code § 1572).

In *Gabriel Technologies Corp. v. Qualcomm Inc.*, No. 08-cv-1992-MMA (POR), 2009 WL 3326631 (S.D. Cal. Sept. 3, 2009), the plaintiffs alleged that the defendants misrepresented their intent to perform in accordance with a license agreement, "particularly with respect to the terms of the agreement providing for protection of confidential information and the opportunity to create and jointly own" certain technology. *Id.* at *13. The court found the claim focused on the misrepresentations regarding the intent to perform

according to an agreed upon contract, and is not substantially equivalent to the claim for trade secret misappropriation. *Id.* Thus, it was not preempted. *Id.*

Here, however, Plaintiff's fourth causes of action asserts that Dr. Rebeiz's false representation led to three different things: (1) Anokiwave entered into the contract with Dr. Rebeiz and put him on its Board; (2) Anokiwave gave Dr. Rebeiz stock; and (3) Anokiwave shared confidential information with Dr. Rebeiz. Overall however, the claim is that Dr. Rebeiz's false representation induced Anokiwave into entering into a contract with Dr. Rebeiz. *See Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 415 (1996) (holding fraud in the inducement "occurs when the promisor knows what he is signing but his consent is induced by fraud") (internal quotation marks omitted). The Parties' contract is the catalyst that led to the other allegations, namely, Anokiwave giving Dr. Rebeiz stock and providing him with confidential information. Like in *Gabriel Technologies*, the gist of this claim focuses on the inducement to enter into the contract into the first place. This independent basis for the claim leads the Court to conclude that the claim is not preempted. The Court therefore **DENIES** the Motion to Dismiss Plaintiff's fourth cause of action.

### F. Fifth Cause of Action: Intentional Interference with Existing Contractual Relations

This cause of action alleges the SpectraBeam Defendants interfered with Anokiwave and Dr. Rebeiz's contract "which prohibited [Dr.] Rebeiz from disclosing Anokiwave's Proprietary Information." SAC ¶ 67. Plaintiff alleges that Defendants Kunar and Zihir founded SpectraBeam "with the knowledge and expectation that [Dr.] Rebeiz would disclose to them Anokiwave's Proprietary Information relating to Anokiwave's RF-microchips and offered [Dr.] Rebeiz compensation for his disclosure." *Id.* ¶ 68.

The court in *AirDefense, Inc. v. AirTight Networks, Inc.*, No. C 05-4615JF, 2006 WL 2092053 (N.D. Cal. July 26, 2006), also analyzed a claim of intentional interference with contractual relations and determined that CUTSA expressly preempts the claim. *Id.* at *5. In so holding, the court simply referenced the definitions in CUTSA. *Id.* Misappropriation

of a trade secret means disclosure of a trade secret by a person who "[u]sed improper means" to acquire knowledge of the trade secret. Cal. Civ. Code § 3426.1(b). "'Improper means" includes . . . breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means.'" Cal. Civ. Code § 3426.1(a). Because the allegation was that the defendant engaged in intentional acts designed to induce a breach of the contractual relationship, the claim was preempted and the court dismissed the claim. *AirDefense*, 2006 WL 2092053, at *5.

Similarly, in *K.C. Multimedia*, the court found an intentional interference claim preempted when it alleged that respondents "engaged in intentional acts designed to induce a breach or disruption of plaintiff's contractual relationship" by "helping" and "encouraging" him "to misappropriate" trade secrets and then "luring" him to become their employee. 171 Cal. App. 4th at 960. The court concluded this claim legally fell within the statutory definition of "improper means" and was therefore preempted. *Id.* at 961 (citing Cal. Civ. Code § 3426.1(a)).

Here, Plaintiff's intentional interference claim is based on SpectraBeam Defendant's actions of recruiting Dr. Rebeiz with the expectation that he disclose proprietary information. This is almost identical to the allegation in *K.C. Multimedia* and falls within the legal definition of "improper means." Cal. Civ. Code § 3426.1(a).[2] Because the alleged conduct derives from "the same nucleus of facts" as the trade secret claim, it is therefore preempted. Consequently, the Court **GRANTS** the Motion to Dismiss Plaintiff's fifth cause of action.

///

---

[2] By contrast, in *Titan Global LLC v. Organo Gold International, Inc.*, No. 12-CV-2104-LHK, 2012 WL 6019285 (N.D. Cal. Dec. 2, 2012), the court denied the motion to dismiss the claim of intentional interference with contractual relations. *Id.* at *10. The court in *Titan Global LLC* found that the intentional interference claim was "based not only upon allegations that Defendants misappropriated trade secret" lists, but also upon allegations of defamation and misleading income representations. *Id.* Here, however, there are no other allegations besides the misappropriation of trade secrets. *Titan Global* is therefore distinguishable.

### G. Sixth Cause of Action: Tortious Interference with Prospective Business Relations

Plaintiff's sixth cause of action alleges that Defendants interfered with Plaintiff's business expectations with its potential customers through the disclosure of Plaintiff's proprietary information. SAC ¶¶ 73–74.

Plaintiff argues that this claim survives for two reasons: First, it is not preempted because the alleged wrongful conduct "has absolutely no dependency on the nature of the information as either Proprietary Information or confidential." Opp'n at 19. In support of this argument, Plaintiff points to its claim of false advertising (its eighth cause of action). But the false advertising claim, which alleges that Defendant falsely claim its microchips contain "novel" features, appears nowhere under this sixth cause of action. SAC ¶ 93. The claim of tortious interference is clearly based on the disclosure of private information and not on false advertising. *See id.* ¶ 73 (alleging "*[b]ecause of* Rebeiz's relationship with Anokiwave and his disclosure of Anokiwave's Proprietary Information," Anokiwave was injured) (emphasis added). The two claims are not at all connected in the Complaint. The Court therefore rejects this alleged distinction.

Second, Plaintiff argues the sixth cause of action is based on the non-tort claim of Rebeiz's fiduciary duties to Anokiwave and is thus not preempted by CUTSA. Opp'n at 20. To state a claim for tortious interference with business relations, a plaintiff must establish five elements:

> (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.

*TransWorld Airlines, Inc. v. Am. Coupon Exch., Inc.*, 913 F.2d 676, 689 (9th Cir. 1990).

In *Angelica*, the court analyzed the same issue of whether the claim of interference with business relations was preempted by CUTSA. 220 Cal. App. 4th at 508. The court

12

18-CV-629 JLS (MDD)

concluded that the claims were based on the employee's "wrongful conduct in violating the noncompetition agreement and violating his duty of loyalty to" the plaintiff and not based on any misappropriation of trade secret. *Id.* Therefore, the court held that the defendant's "theory of liability on [the] claim[] was independent of any trade secret claim" and was not preempted. *Id.*

Here, the alleged intentional act allegedly designed to disrupt the interference with business relations is Dr. Rebeiz's "disclosure of proprietary information in violation of the PIA and his fiduciary obligations to Anokiwaive." SAC ¶ 73. This allegation distinguishes this case from *Angelica*; although Plaintiff here added in the violation of Dr. Rebeiz's fiduciary obligations, the alleged interference with business relations is through the disclosure of the trade secret information, regardless of why it was allegedly wrongful, *i.e.*, due to the PIA or due to his relationship with the company. Therefore, because this claim is based on the same facts as Dr. Rebeiz's alleged wrongful conduct in disclosing trade secrets, this claim is preempted by CUTSA. The Court **GRANTS** the Motion to Dismiss Plaintiff's sixth cause of action.

### H. Tenth Cause of Action: Unfair Competition

This cause of action alleges that Defendants have engaged in unfair competition, and the alleged wrongful conduct "includes the disclosure and use of Anokiwave's Proprietary Information as defined in the PIA." *Id.* ¶ 107.

In *Silvaco*, prior to amending its complaint, the plaintiff pled defendants engaged in unfair business practices in violation of Section 17200 "including, but not limited to the misappropriation and use of . . . trade secrets." 184 Cal. App. 4th at 240–41. The court determined that the "count thus sounded in misappropriation of trade secrets and stated no basis for relief outside of CUTSA." *Id.* at 241. "CUTSA bars [Unfair Competition Law] claims sounding in misappropriation of trade secrets." *Id.* The plaintiff then amended its unfair competition claim to assert wrongful conduct "other than the acts that constitute misappropriation" of trade secrets. *Id.* The court held the amended claim does not depend on the existence of a trade secret, and was thus not preempted. *Id.* at 241–42; *see also*

*Angelica*, 220 Cal. App. 4th at 508 (finding the unfair competition claim was not preempted because it was based on plaintiff's "wrongful conduct in violating the noncompetition agreement and violating his duty of loyalty to [defendant]").

Here, Plaintiff's claim is like the claim in *Silvaco* before amendment because Plaintiff alleges that Defendants engaged in unfair business practices due to the disclosure of the trade secret. Thus, it "sounds" in misappropriation of trade secrets and is preempted. The Court therefore **GRANTS** the Motion to Dismiss Plaintiff's tenth cause of action.

## II. Failure to State a Claim

Defendants next argue that Plaintiff fails to state a claim for its second, third, fourth, sixth, eleventh, and twelfth causes of action. As analyzed above, the Court has granted the motion to dismiss the second, third, and sixth causes of action due to preemption; consequently, the Court analyzes only Plaintiff's fourth, eleventh, and twelfth causes of action.

### A. *Fourth Cause of Action: Fraud in the Inducement*

As noted above, Defendants believe Plaintiff erroneously titled this cause of action and meant to allege a promissory fraud claim. Defendants analyze this claim as a promissory fraud claim and argue that Plaintiff has not adequately pled the elements of promissory fraud. MTD at 27. Regardless of what Defendants argue Plaintiff intended to plead, however, Plaintiff titled this claim "fraud in the inducement"; consequently, the Court must determine whether Plaintiff states a claim for fraud in the inducement.

Under Federal Rule of Civil Procedure 9(b), "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." In particular, allegations of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). When alleging that fraudulent statements were made, a plaintiff must identify the false statements and indicate why they were false. *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc). Under California law, a claim for fraud in the inducement requires: (1) a misrepresentation; (2) knowledge of its falsity; (3) intent to induce reliance;

(4) justifiable reliance; and (5) resulting damage. *Id.*

Here, Plaintiff alleges that Dr. "Rebeiz [knowingly falsely] represented to Anokiwave that all Proprietary Information would remain confidential and the exclusive property of Anokiwave." SAC ¶¶ 59–60. Plaintiff alleges this was false because Dr. Rebeiz "did not in fact intend to maintain Anokiwave's Proprietary Information." *Id.* ¶ 60. Plaintiff does not provide exactly when and where Dr. Rebeiz allegedly stated he intended to keep the Proprietary Information confidential, for example, on a certain date while standing in a certain room. Plaintiff argues, however, that the promise to do so was evident in the contract that Dr. Rebeiz signed and in which he promised to keep the information confidential, knowing he would not honor it. Opp'n at 27. The Court finds these allegations are "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns*, 567 F.3d at 1124. The Court therefore **DENIES** the Motion to Dismiss Plaintiff's fourth cause of action.

### B. *Eleventh Cause of Action: Odin Mask Work Infringement and Twelfth Cause of Action: Laguna Mask Work Infringement*

Plaintiff brings these causes of action under 17 U.S.C. § 911, alleging that Plaintiff "owns all rights, title and interest in the mask works, chip design and layout of its Odin microchip." SAC ¶ 112. Plaintiff alleges it has applied to the Register of Copyright for registration of a claim of protection in the microchip's mask work and has the exclusive right to reproduce the microchip's mask work. *Id.* ¶¶ 113–14. Plaintiff alleges that Spectrabeam has reproduced "at least one substantially similar and substantially identical mask work and semiconductor chip product in which the mask work is embodied, including the SB-TRXBF4-28 microchip." *Id.* ¶ 115. Plaintiff alleges the same for its Laguna microchip. *Id.* ¶¶ 122–32.

Defendants move to dismiss these cause of action because Plaintiff has not pled: "(1) that the Register of Copyrights has issued certificates of registration for the Odin and Laguna mask work or, (2) that the application for registration was properly submitted to,

but refused by, the Copyright Office and notice of the lawsuit and a copy of the SAC was served on the Register of Copyrights." MTD at 30.

Plaintiff responds by citing to *Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, 606 F.3d 612 (9th Cir. 2010), where the Ninth Circuit asked, under 17 U.S.C. § 411(a):

> What does it mean to "register" a copyrighted work? Stated another way, is a copyright registered at the time the copyright holder's application is received by the Copyright Office (the "application approach"), or at the time that the Office acts on the application and issues a certificate of registration (the "registration approach")?

*Id.* at 615 (footnote omitted). The Ninth Circuit answered that the "application approach" governed. *Id.* at 619. Although this case did not analyze the mask work infringement statute, Plaintiff argues that the statute should be interpreted the same way. Opp'n at 30.

Plaintiff cites no authority allowing the Court to make such a finding and cites only the "rationale" of the Ninth Circuit and "judicial economy" as support. Opp'n at 31. Plaintiff argues it may proceed "regardless of how the Copyright Office treats its applications, because the statute permits a mask work infringement claim even if the Copyright Office refuses to issue a certificate of registration (which certificate here will be deemed to be refused if not issued by June 23, 2018)." *Id.*[3]

Given the procedural posture of this case at the time it was pled, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's eleventh and twelfth causes of action. Plaintiff is granted leave to amend these causes of action given its arguments that circumstances have recently changed.

## CONCLUSION

The Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss (ECF No. 6), and **DISMISSES WITHOUT PREJUDICE** Plaintiff's second,

---

[3] Pursuant to 17 U.S.C. § 908(g), "[t]he failure of the Register of Copyrights to issue a certificate of registration within four months after an application for registration is filed shall be deemed to be a refusal to issue a certificate."

third, fifth, sixth, eleventh, and twelfth causes of action.  This dismissal is with leave to amend because the Court finds Plaintiff may be able to allege certain causes of action so as not to be preempted by CUTSA.  The Court **DENIES** the remainder of Defendants' Motion to Dismiss.

Plaintiff **MAY** file an amended complaint <u>on or before thirty (30) days of the electronic docketing of this Order</u>.  If Plaintiff fails to file an amended complaint by this time, this case will proceed on the remaining causes of action.

**IT IS SO ORDERED.**

Dated: September 17, 2018

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge