# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANOKIWAVE, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>GABRIEL REBEIZ, an individual; SPECTRABEAM, LLC, a Delaware limited liability company; TUMAY KANAR, an individual; SAMET ZIHIR, an individual; INTEGRATED DEVICE TECHNOLOGY, INC., a Delaware corporation; and DOES 1-20 inclusive<br><br>Defendants. | Case No. 3:18-cv-00629-JLS-MDD<br><br>**ORDER ON JOINT MOTIONS FOR DISCOVERY DISPUTES [ECF Nos. 70, 74, 81, 85]** |

Before the Court are four joint motions for determination of various discovery disputes. At issue are approximately one hundred requests for discovery propounded by both parties.

# LEGAL STANDARD

The Federal Rules of Civil Procedure authorize parties to obtain discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" FED. R. CIV. P. 26(b)(1). "Information within the scope of discovery need not be admissible in evidence to be discoverable." *Id.* District courts have broad discretion to limit discovery where the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." FED. R. CIV. P. 26(b)(2)(C). Courts have broad discretion to determine relevancy for discovery purposes. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

An interrogatory may relate to any matter that may be inquired of under Rule 26(b). FED. R. CIV. P. 33(a)(2). The responding party must answer each interrogatory by stating the appropriate objections with specificity or, to the extent the interrogatory is not objected to, by "answer[ing] separately and fully in writing under oath." FED. R. CIV. P. 33(b). The responding party has the option in certain circumstances to answer an interrogatory by specifying responsive records and making those records available to the interrogating party. FED. R. CIV. P. 33(d).

Courts "will generally find [interrogatories] overly broad and unduly burdensome on their face to the extent they ask for *every fact* which supports identified allegations." *Hiskett v. Wal-Mart Stores, Inc.*, 180 F.R.D. 403, 404-05 (D. Kan. 1998). "[T]o the extent Plaintiff seeks every minute detail and narratives about the subject incident . . ., written discovery is not the proper vehicle to obtain such detail."

*Bashkin v. San Diego* County, No. 08-cv-1450-WQH-WVG, 2011 WL 109229, *2 (S.D. Cal. Jan. 13, 2011).

A party may request the production or inspection of any document within the scope of Rule 26(b). FED. R. CIV. P. 34(a). "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons." Rule 34(b)(2)(B). An objection must state whether any responsive materials are being withheld on the basis of that objection. Rule 34(b)(2)(C). An objection to part of a request must specify the part and permit inspection or production of the rest. *Id.* The responding party is responsible for all items in "the responding party's possession, custody, or control." Rule 34(a)(1). Actual possession, custody or control is not required. Rather, "[a] party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document." *Soto v. City of Concord*, 162 F.R.D. 603, 620 (N.D. Cal. 1995).

## DISCUSSION

### A. ECF No. 70: Defendant SpectraBeam's Requests for Production

#### a. RFP Nos. 2, 3, 4, 5, and 6

Through its RFPs, SpectraBeam seeks what appear to be different visual representations of the chips named in Plaintiff's Complaint and Trade Secret Statement ("Chips at issue") as of August 14, 2016, the date Dr. Rebeiz resigned from the Anokiwave Advisory Board. Each category of document illustrates different levels of technical detail for each

individual chip.  Generally, the requests seek mask works, fabrication masks (in native gds file format), layouts, physical floor plans, and detailed schematics.

The crux of the dispute appears to be that Plaintiff has provided block diagrams of the chips at issue, which it alleges are sufficient to prove or disprove its trade secrets claims.  Plaintiff explains that block diagrams are a high-level conceptual representation of the chips that illustrate the relationship between individual components.  The masks, layouts, floor plans, and schematics, on the other hand, provide discrete technical details of the chips.

Through this dispute, Plaintiff confirms that it does not allege that Defendants misappropriated the technical details of its chips' component parts.  Rather, Plaintiff claims Defendants misappropriated the unique combination of components and features that are present on each chip and that are sufficiently illustrated in the block diagrams.  Thus, Plaintiff claims that because technical details are not alleged as trade secrets, they are therefore irrelevant and not subject to discovery. Plaintiff also argues that the dismissal of its mask work infringement claims renders the requests for technical data moot.

Defendants disagree and claim the highly detailed technical documents they requested are necessary for their expert to complete a technical comparison of the chips at issue.  Defendants recognize that Plaintiff claims its trade secrets are embodied in the combination of features in each chip and not in the technical details of each component part.  However, they also claim Plaintiff has not sufficiently committed to that position.

Plaintiff's Trade Secret Statement describes 43 separate trade secrets. The identified secrets relevant to these requests are clearly described as chips utilizing the "Coupling Solution" and/or "Fast Beam Steering Technology" and as having a unique architecture and combination of features for use on a single microchip. (ECF No. 70-2).

Defendants' motion to compel further responses is **DENIED.** Plaintiff's trade secret statement describes its trade secrets as single microchips with a combination of specific features. Defendant fails to explain how the technical details of the component parts are relevant to the claims and trade secrets as alleged by Plaintiff.

### b. RFP Nos. 9, 10, 11, 12, 13, and 14

SpectraBeam seeks "[d]ocuments sufficient to show the details of" specific components of the chips at issue as of August 14, 2016 including the phase shifter, gain control functions (or Variable Gain Amplifier), RF-system lineup, packaging, temperature sensor, and temperature compensation in the radio frequency lineup."

Defendants' arguments echo those made in the previous group of requests as to why the technical details of the chips at issue are relevant. As discussed above, a review of the Trade Secret Statement makes clear that Plaintiff is not claiming the technical details of these individual components as a trade secret. Defendants' position that the technical details are still relevant is not persuasive. Defendants' motion to compel production of the technical details of specific components of the chips at issue is **DENIED**.

///

///

### c. RFP Nos. 47-57

Through these requests, SpectraBeam seeks documents related to any mask work applications filed by Plaintiff, communications with the Copyright Officer concerning mask work applications, and documents supporting Anokiwave's mask work infringement claims.  Defendants argue that the mask work applications will show whether Plaintiff's mask works were found to be original or commonly known by the Copyright Office.  Plaintiff argues the mask works and mask work applications are no longer relevant because it dismissed the mask work infringement claims.  Plaintiff also explains that "mask works" is a legal term and is synonymous with layouts.

In light of the finding that Defendants have failed to demonstrate the mask works are relevant and all mask work infringement claims have been dismissed, Defendants' motion to compel is **DENIED**.

## B. ECF No. 74: Defendant SpectraBeam's Interrogatories and RFPs, and Defendant Rebeiz's Interrogatories

### a. SpectraBeam's Interrogatories 4, 6, and 14

SpectraBeam's disputed interrogatories are related and will be considered together.  Interrogatories Four and Six seek all documents supporting the claim that the persons Plaintiff identified invented or developed each claimed trade secret and ask Plaintiff to describe in detail how the identified persons invented or developed each trade secret.  Interrogatory 14 asks Plaintiff to identify all facts supporting its contention that each claimed trade secret is unique, novel, or otherwise distinguishable from unprotected public knowledge or information generally known to persons in the relevant field.  Plaintiff objects on

grounds that all three requests are overbroad, unduly burdensome, vague, ambiguous, and compound.

The Court agrees that each of the three requests are overbroad, cumulative, and compound. Plaintiff previously designated eighteen people who were involved in inventing or developing one or more of the 43 claimed trade secrets. Requiring Plaintiff to respond to the requests as to each of the eighteen persons identified and addressing each of the 43 identified secrets in a single interrogatory is improper and unduly burdensome. Defendants' motion to compel further responses is **DENIED**.

### b. SpectraBeam's RFP Nos. 37, 38, 43

RFP 37 seeks documents to show "every instance in which Anokiwave, or any of its engineers, founders, or executives, has designed a radio frequency integrated chip, with or without basing the design on one or more pre-existing intellectual property blocks, in approximately 12 months or less." Plaintiff objects on grounds that the request is overbroad, vague, ambiguous, and unintelligible as to "radio frequency integrated chips" and "with or without basing the design on one or more pre-existing intellectual property blocks."

This request is overbroad and not proportional to needs of the case. A response would require Plaintiff to determine if any of its employees had ever (in their career and not limited in time) designed any radio frequency chip in less than 12 months. This would also necessarily includes chips not at issue here. Defendants' motion to compel is **DENIED** as to RFP 37.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RFP 38 seeks all Anokiwave Advisory Board records, including correspondence, meeting agendas, minutes, recordings and so forth, for time when Rebeiz served on the board.  Plaintiff agreed to produce all non-privileged, responsive documents received by Defendant Rebeiz in his role as member of advisory board, as well as communications between Anokiwave and one or more of its Advisory Board Members relating to "Anokiwave's development of RF chips, claimed trade secrets, and claimed proprietary information."  Defendants argue this is not sufficient because they want all Advisory Board records.  Defendants make no argument as to why all the Advisory Board records are relevant. The Court finds Plaintiff's response is sufficient.  Defendants' motion to compel is **DENIED** as to RFP 38.

RFP 43 seeks all documents to support allegations that Plaintiff acted in reliance on Rebeiz's alleged representations that "all proprietary information would remain confidential and the exclusive property of Anokiwave."  Plaintiff agreed to produce the Proprietary Information Agreement.  Defendants' argue further response is required because it is not clear whether Plaintiff relied on any other documents.  Plaintiff stated that it has already agreed to produce all communications it had with Rebeiz and so there is nothing left to compel.

If Plaintiff has other documents that show its reliance on Rebeiz's agreement to not disclose confidential information or use it, it must be disclosed. If they have disclosed everything as they state, then that is sufficient.  Defendants' motion to compel is **DENIED** as to RFP 39.

///

///

### c. Defendant Rebeiz's Interrogatories 6, 7, and 8

Rebeiz's interrogatories six, seven, and eight are similar and will be discussed together. Interrogatory Six asks Plaintiff what percentage of Anokiwave's outstanding shares are owned by Rebeiz. Interrogatory Seven asks what percentage of Anokiwave's outstanding shares are "owned by each prior or current member of the Anokiwave Advisory Board." Finally, Interrogatory Eight asks Plaintiff to identify the amount and date of compensation, including stock options, shares, loans, wages, stipends, and honoraria, that Anokiwave has paid or offered to pay every member of Anokiwave's Advisory Board.

Plaintiff answered interrogatory six stating that Rebeiz was awarded 100,000 stock options and exercised 38,543 of those options. Plaintiff objected to interrogatories seven and eight arguing they are compound, vague, overly broad, not relevant, and implicate the privacy interests of third parties.

Defendant argues the percentage of shares requested in numbers six and seven are relevant because Plaintiff "repeatedly emphasized the number of shares" Rebeiz owned in its Complaint and that a percentage is needed for context and is relevant to both liability and damages. Defendant also argues the information about other board members' compensation gives "relevant factual context" in response to Plaintiff's claim that Rebeiz tricked Anokiwave into giving him stock.

The Court fails to see how the percentage of shares owned by all former and current board members as well as their compensation is relevant to either liability or damages or any other claim or defense. Defendants' motion to compel is **DENIED**.

### C. ECF No. 81: Plaintiff's Discovery Requests[1]

#### a. Plaintiff's Interrogatories to Defendants SpectraBeam and Rebeiz 1-9 and 14-22

Plaintiff propounded identical interrogatories to both SpectraBeam and Rebeiz. Interrogatories 1-9 request Defendant to "identify with specificity (or by your best estimate)" the number of hours spent by "any and all representatives of Spectrabeam" in research and development of specified chips. Interrogatories 14-22 request Defendant to describe or give a timeline of research and development for specified chips.

The dispute underlying these requests relates to which chips are at issue in this litigation and, as a result, what information can be discovered about each parties' chips. Specifically, interrogatories 1-4 and 14-17 ask about ku-band chips. Plaintiff's Trade Secret Statement and the operative Complaint state that only its ka-band chips are at issue. Neither document mentions ku-band chips. Plaintiff argues that they are still entitled to the information about ku-band chips as it could lead to information about the extent of Defendants' alleged misappropriation and resulting unjust enrichment.

The information related to ku-band chips is not relevant. Plaintiff specifically identified chips that were at issue in their Fifth Amended Complaint and the Third Trade Secret Statement. Plaintiff claims that the Trade Secrete Statement and Complaint do not limit discovery into other unnamed chips. However, this is the exact opposite of what Plaintiff argues in refusing to turn over certain information requested by

---

[1] Plaintiff has propounded identical or nearly identical discovery requests to one or more Defendants. In those cases, the requests are discussed together.

Defendants. Plaintiff cannot have it both ways. Absent any allegation that Defendants' misappropriated Plaintiff's trade secret information in their Ku-band chips, the information is not relevant to this litigation. Plaintiff's motion to compel further response is **DENIED**.

Interrogatories 5-9 and 18-22, on the other hand, seek information about the chips identified in Plaintiff's pleadings. Plaintiff's amended responses lay out a timeline and rough estimate of hours spend in some stages of development for the identified chips. The timelines begin in 2012 and include the work done during Defendant Zihir's and Kanar's doctoral studies. Defendants explain that the development of their chips happened over the course of years and that hour logs of time spent on each phase or each individual chip were not kept.

Defendants state that detailed hour logs do not exist and are not generally kept in academia. Defendants cannot produce what does not exist. The lengthy explanations describe the general process and include some rough hours estimate. These responses are sufficient given Defendants verification that nothing more exists. Plaintiff's motion o compel is **DENIED**.

### b. Plaintiff's RFPs to Defendants Zihir, Kanar, Rebeiz, and SpectraBeam

#### i. RFP Nos. 13-16 as to Individual Defendants and SpectraBeam

Through identical interrogatories to the individual Defendants and SpectraBeam, Plaintiff seeks all documents and communications regarding the founding or plans to found a company with goods or services relating to RF chips, including SpectraBeam. Defendants

initially stated they are withholding documents based on their lengthy standard objections.

It appears from this motion that after the amended responses were served, lengthy meet and confers took place and Plaintiff's Trade Secret Statement was amended. Through that process, various limitations were proposed and accepted that limited these disputed requests in time and breadth. It also appears that after these negotiations, Defendants served responsive documents as to SpectraBeam and stated that it does not have any responsive documents concerning other entities. Plaintiff's concern appears to be that it is not confident that Defendants have in fact turned over all responsive documents subject to the limitations the parties agreed upon. If Defendants have produced all responsive documents in their possession, the responses are sufficient. If Defendant is withholding responsive documents, it must produce them.

### ii. RFP Nos. 21-22 as to Individual Defendants

RFP No. 21 seeks documents sufficient to identify past, present, or future ownership interest in any company. Through the meet and confer process, and in response to Defendants' objections, Plaintiff proposed limiting the request to "documents relating to the founding or plans to found a company with goods or services related to RF chips, including SpectraBeam or any other entity that could utilize information obtained from Anokiwave commercially and in which you expected to be an owner, founder, shareholder, or other financial beneficiary." Plaintiff claims Defendant accepted the limitation but failed to amend its response.

RFP No. 22 seeks all documents relating to communications relating to any past, present, or future ownership interest in any

company owned or founded by Kanar or Zihir. Plaintiff proposed the same limitations as discussed in RFP No. 21, which Defendant accepted. The Court fails to see how these requests as amended differ from RFP Nos. 13-16 discussed above. If documents are being withheld, they must be produced as agreed upon. Plaintiff's motion to compel is **GRANTED**.

### iii.   RFP Nos. 25-26 as to Rebeiz and SpectraBeam

RFPs 25 and 26 seek all documents and communications relating to the purchase, sale, funding or funding for development of RF chips. Defendants object on grounds of relevance and proportionality. To the extent Plaintiff's requests seek all documents and information about RF chips that are not at issue in this litigation, the request is fatally overbroad. Plaintiff's motion to compel further responses is **DENIED**.

### iv.   RFP No. 27 as to Individual Defendants and SpectraBeam

RFP No. 27 seeks all documents relating to communications relating to any merger, purchase, sale, or investment between SpectraBeam and IDT, including any offers to engage in similar transactions or negotiations. Defendants object on general grounds but agreed to produce: (1) the due diligence files SpectraBeam provided to IDT; (2) the acquisition contract between IDT and SpectraBeam; and (3) documents to demonstrate what each individual Defendant received in connection with the sale of substantially all of SpectraBeam's assets to IDT.

In its position statement, Plaintiff explains the communications between SpectraBeam and IDT regarding the acquisition and negotiations leading up to the actual sale are probative to its claims that

13

IDT was aware that Defendants had incorporated one or more of Anokiwave's trade secrets into its products.  Defendant's position statement claims it is producing the relevant non-privileged documents identified in Plaintiff's position statement.  To the extent that Defendant has in fact done so, its response is sufficient.  If Defendant has failed to produce communications as discussed in Plaintiff's position statement, it must do so now.

### v. RFP Nos. 31-33 as to Individual Defendants and Nos. 38-40 as to SpectraBeam

RFPs 31-33 seek "all documents relating to technology, trade secrets, or know how that [Drs. Zihir, Kanar, and Rebeiz] transferred to IDT."  To the extent the requests seeks all documents relating to any technology or "know how" and is without a time limitation, it is overbroad.  Plaintiff's motion to compel is **DENIED**.

### vi. RFP Nos. 34-35, and 49-50 as to Individual Defendants and Nos. 41-42 and 56-57 as to SpectraBeam

RFPs 34-35 and 41-42 seek all documents and communications relating to the design, manufacturing, specification, development, or testing of RF chips by the individual defendants or SpectraBeam.  RFPs 49-50 and 56-57 seek all documents and communications relating to the funding of RF chips similar to Anokiwave RF chips.  Defendants object arguing the requests are overbroad in that they seek information about all RF chips and that the phrase "RF chips similar to Anokiwave RF chips" is overbroad as to time.

The Court agrees that both requests are overbroad to the extent the seek all documents and seek information about RF chips not at issue in this litigation. Defendants' amended responses agreed to produce all responsive non-privileged documents relating to the chips at issue. This is sufficient. Plaintiff's motion to compel further responses is **DENIED**.

### vii.  RFP Nos. 54, 56 as to Individual Defendants and Nos. 61 as to SpectraBeam

RFP Nos. 54 and 61 seek documents to identify all employees, consultants, or contractors who have worked on the research, development, design, or manufacturing of SpectraBeam's RF chips. Defendants' amended responses state that only Dr. Kanar and Dr. Zihir designed and developed the chips and SpectraBeam did not have any employees. Plaintiff was not satisfied with this response. In Defendants' position statement it confirms that Drs. Kanar and Zihir were the only members of the design team and no consultants or contractors were involved. This is sufficient. Plaintiff's motion to compel further responses is **DENIED**. Defendants should consider whether a deposition of Plaintiff under Rule 30(b)(6) is the better vehicle to obtain this information.

RFP No. 56 seeks all employment or contractor agreements between Defendant Rebeiz and IDT. In its amended response, Defendant agreed to produce his consulting agreement with IDT. Plaintiff argues that this response is incomplete because it does not identify whether any other consultant or contractor agreements exist. The Court fails to see how other agreements would be responsive to this

request.  Defendant produced the agreement.  This response is sufficient. Plaintiff's motion to compel further responses is **DENIED**.

///

### c. RFP Nos. 29 and 33-36 as to Defendant SpectraBeam

RFP Nos. 29, 33, 34, and 35 are similar and will be discussed together.  RFP No. 29 seeks communications relating to offers or potential offers from third parties for the merger or acquisition of SpectraBeam.  RFP Nos. 33 and 34 seek all formal or informal valuations relating to the sale of SpectraBeam to IDT.  And RFP No. 35 seeks all agreements relating to IDT's assumption of either the assets or liabilities of SpectraBeam.

Defendants have agreed and confirmed through this joint motion that they are producing all responsive documents that are not subject to a non-disclosure agreement.  This is sufficient.  Plaintiff's motion to compel is **DENIED**.

Plaintiff's RFP No. 36 seeks "all final agreements between [SpectraBeam] and IDT."  Defendant states it is withholding documents based on its objections that the request is overbroad.  Defendant confirms that it produced the final acquisition agreement between SpectraBeam and IDT.  Plaintiff argues further response is required because there may be other final agreements between SpectraBeam and IDT.  Plaintiff fails to provide insight as to what types of agreements it seeks or the relevance of other agreements to its claims.  Defendant claims to have produced what was requested.  If that is the case, Defendant's response is sufficient and no further response is required.

No. 18-cv-00629-JLS-MDD

### D. ECF No. 85: Defendant Spectrabeam's RFPs and Defendant IDT's Interrogatories

#### a. RFP No. 73

RFP No. 73 seeks "documents sufficient to identify alleged beginning and end dates of secrecy of claimed trade secrets." Plaintiff has or will produce documents to identify alleged end dates of secrecy for each claimed trade secret. However, Plaintiff objects to identifying a beginning date on grounds that it assumes that there are specific dates on which alleged secrecy of any information sprang into existence. Plaintiff further argues that the beginning of secrecy is not relevant to any claim or defense because all it must prove is whether the information was secret at the time of the alleged misappropriation. Defendants argue Plaintiff's response is not sufficient because the beginning date is essential to show that the information was public or readily ascertainable.

Plaintiff's response is sufficient. Even if a beginning date of secrecy were relevant, Plaintiff has explained that the claimed trade secrets developed over a significant period of time through the collaboration of many individuals rendering them incapable of identifying specific dates that the information became secret. Plaintiff is correct regarding its burden. No further response is required.

#### b. RFP No. 76 and 77

Through these RFPs, Defendant seeks all "communications, including but not limited to public announcements, job listings, and person to person communications, disclosing engineering skill sets required for

Anokiwave engineering positions [RFP No. 76] and describing Anokiwave's business [RFP No. 77] from 2013-2017."

Plaintiff objects on grounds that the requests seek information that is publicly available and overbroad because they conceivably include every communication Anokiwave had from 2013-2017. The Court agrees the requests as worded are fatally overbroad. However, Defendants clarify in this motion that they are seeking "non-confidential external job announcements [for Anokiwave engineering positions and job announcements describing Anokiwave's business plans] from 2013 to 2017." Plaintiff does not object to producing these documents. Plaintiff must produce documents responsive to Defendants' narrowed request.

### c. RFP No. 78

Defendants seek "all due diligence documents Anokiwave provided to any company or individual, including but not limited to IDT, from January 1, 2013 to the present."

Plaintiff objects on grounds that the request is overbroad and disproportionate to the needs of the case. Plaintiff also states that it did not make any disclosure of any of its claimed trade secrets with the protection of a nondisclosure agreement. Defendants argue this information is relevant because the disclosures are likely to include information about Plaintiff's claimed trade secrets and if that information as disclosed with or without confidentiality it may show whether Plaintiff suffered harm.

Plaintiff states it has agreed to produce all documents demonstrating when trade secret information was made publicly available prior to Rebeiz's resignation. Plaintiff also attested that no documents exist

showing disclosures of trade secrets that were not made subject to a confidentiality agreement.  Plaintiff has also agreed to produce profit and loss statements, and documents to calculate damages in response to other RFPs.  To the extent this RFP requests the same documents, it is duplicative.  To the extent it seeks complete disclosures of unrelated financial and technical information, it is overbroad.  No further response is required.

### d. RFP No. 79

Defendants seek documents "sufficient to show all versions of Anokiwave's complete external website from January 1, 2013 to the present, including but not limited to the content and timing of all changes, revisions, additions, and deletions."

Plaintiff objects that the request is overbroad.  Defendant contends that information that Anokiwave publicly displayed cannot have been secret.  At a minimum it will show end date of trade secrets.  It is undisputed that Anokiwave publicly posted "spec sheets" disclosing most of its claimed trade secrets about the chips at issue. This is the end date of secrecy and Plaintiff has agreed to produce this information in response to other RFPs.  Defendants state this request is "designed to test the accuracy of Anokiwave's interrogatory response against Anokiwave's promotional website materials, which may have inadvertently signaled its product line or business plans to the relevant field."

Although some archived information on the website could be relevant, seeking documents to show every change or update to a website for six years is massively overbroad.  No response is required.

### e. IDT Interrogatories 2, 3, and 4 (damages)

IDT propounds contention interrogatories asking Plaintiff to identify "all facts" that support Plaintiff's claims that it suffered damage as a result of Defendants' conduct, to identify the dates any alleged damaged was suffered, and to identify all facts that support any ongoing claims of damage.

Plaintiff objects to the interrogatories to the extent that they seek "all facts" resulting in each request being unduly burdensome. Plaintiff also argues the requests are premature because substantial discovery remains to be conducted. Defendants contend that during meet and confers, the parties limited the requests to "material facts" about Anokiwave's claimed damages although Plaintiff maintains that the limitation to "material facts" does nothing to render the interrogatory less burdensome.

Rule 33 of the Federal Rules of Civil Procedure governs contention interrogatories which seek to discover the factual basis for allegations in a complaint. Rule 33(a)(2) provides that an interrogatory is not objectionable merely because it asks for contentions that relate to fact or the application of law to fact. Rule 33(a)(2). A court may order that a party does not need to answer a contention interrogatory until designated discovery is complete or at some later time. Rule 33(a)(2).

Courts generally disfavor contention interrogatories asked before discovery is undertaken. *Tennison v. City & County of San Francisco*, 226 F.R.D. 615, 618 (N.D.Cal.2005). In fact, courts tend to deny contention interrogatories filed before substantial discovery has taken

place, but grant them if discovery almost is complete.  *See, e.g., Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 95 (E.D.Pa.1992).

Defendants' contention interrogatories are premature at this stage of discovery in that they seek support for Plaintiff's claim of damages. Additionally, pursuant to Rule 26, because the contention interrogatories seek "all facts" supporting Plaintiff's allegations, they are overly broad and unduly burdensome on their face.  *See* Fed.R.Civ.P. 26(b)(2)(C) (stating that the court must limit discovery if the burden of the proposed discovery outweighs its likely benefit).

There is no dispute that Plaintiff must disclose this information. The Federal Rules require Plaintiff in its initial disclosures to provide "a computation of each category of damages claimed . . . and to make available documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based." Fed.R.Civ.P. 26(a)(1)(A)(iii).  It may be more appropriate to explore the validity of such disclosures through a Rule 30(b)(6) deposition.  However, any compelled response to an interrogatory at this early stage will most certainly be incomplete.  For the foregoing reasons, Defendants' motion to compel is **DENIED** without prejudice.

**IT IS SO ORDERED.**

Dated:  August 19, 2019

Hon. Mitchell D. Dembin
United States Magistrate Judge

No. 18-cv-00629-JLS-MDD